NO. 07-03-0136-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 9, 2004

_____

BOBBY J. CATE,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-436,240; HON. BRAD UNDERWOOD, PRESIDING
_____

*Opinion*
_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Appellant Bobby J. Cate appeals his conviction of aggravated sexual assault by contending in four issues 1) he received ineffective assistance of counsel, 2) the evidence is legally and factually insufficient to support the verdict that he was the person who committed the crime, 3) the trial court erred in admitting evidence of extraneous offenses

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. §75.002(a)(1) (Vernon Supp. 2004).

at the punishment phase, and 4) the trial court erred in failing to charge the jury with the elements of the extraneous offenses admitted into evidence during the punishment phase. We affirm the judgment of the trial court.

*Background*

On the evening of January 27, 2001, Judy Grow (Grow) was approached by a man in the parking lot of a shopping mall who requested a ride from her. She agreed but during the ride, he threatened her with a knife, forced her to drive out into the country, and raped her. During the incident, appellant examined Grow's driver's license and a picture of her teenage daughter. He told her he would kill her family if she did not comply with his demands. After the rape, he left her in her vehicle and walked away. The incident was not reported until almost two weeks later when Grow sought treatment from the emergency room due to problems related to the assault. She was able to describe appellant and identify him from three different photo spreads, after which he was arrested.

*Issue One - Ineffective Assistance of Counsel*

In his first issue, appellant claims that his trial counsel was ineffective in 1) failing to request a competency examination, 2) failing to request appointment of an expert on eyewitness identification, 3) failing to request a limiting instruction on the admission of extraneous offenses, and 4) failing to request a jury instruction regarding illegally seized evidence. We overrule the issue.

The standard by which we review ineffective assistance of counsel claims is well established. Therefore, we will not repeat it, but cite the parties to *Strickland v. Washington,* 466 U.S. 668, 687-95, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Hernandez*

2

*v. State,* 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) for explanation of the same. Furthermore, claims of ineffective assistance must be firmly founded in the record. *Rios v. State,* 990 S.W.2d 382, 385 (Tex. App.--Amarillo 1999, no pet.).[2]

*Failure to Request a Competency Exam*

Appellant complains that his counsel was deficient in failing to request a competency examination. This allegedly should have been done because Grow testified that while she was riding with appellant he "kept saying stuff that wasn't making any sense." In further explanation, she stated that "he kept telling me about how the government or the IRS owed him millions of dollars, [and] how he was a millionaire" because he was suing them for back taxes.

A person is incompetent to stand trial if he does not have "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding[,] or (2) a rational as well as factual understanding of the proceedings against [him]." TEX. CODE CRIM. PROC. ANN. art. 46.02 §1A (a) (Vernon Supp. 2004). The issue of competency relates to a person's actions at the time of trial, not at the time of the offense. *Rodriguez v. State,* 899 S.W.2d 658, 665 (Tex. Crim. App. 1995), *cert. denied,* 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995). So, what appellant may have said while assaulting his victim alone did not impose upon his counsel the obligation to assess his competency a year later. At the very least, and given the sparse evidence to which

---

[2] A motion for new trial was filed but it was not based on a claim of ineffective assistance of counsel.

3

appellant refers, we cannot say that appellant carried his burden to establish that his counsel acted unreasonably in this instance.

Further, even if we were to assume that the statements presented do reflect on appellant's competency to stand trial, nothing in the record indicates the reasoning behind counsel's failure to pursue a competency hearing or an insanity defense, and therefore he has not overcome the presumption that his counsel acted reasonably. *Tong v. State,* 25 S.W.3d 707, 714 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001); *see Rodriguez v. State, supra* (holding that counsel was not ineffective in failing to obtain a competency evaluation when the defendant pled the insanity defense to a murder charge because counsel may well have believed that defendant was competent to stand trial but was legally insane at the time of the offense); *Huseman v. State,* 96 S.W.3d 368, 375 (Tex. App.--Amarillo 2002, pet. ref'd) (holding it was reasonable to conclude that when counsel filed a motion for examination by a psychiatrist and appointment of a mental health expert but later withdrew them that he determined that they would not be helpful to the defendant); *Ryan v. State,* 937 S.W.2d 93, 104 (Tex. App.--Beaumont 1996, pet. ref'd) (holding that nothing in the record shows why counsel did not follow up on his motion for psychological evaluation and thus counsel could have concluded that the defendant was competent to stand trial).

*Failure to Request Appointment of Expert Witness*

Appellant contends that his counsel was ineffective because he failed to request an expert witness to testify with respect to eyewitness identification. He argues that the only evidence linking him with the offense was the eyewitness identification by the victim and

because there was alibi testimony provided by him, counsel should have engaged the services of an expert witness.

The general rule is that the failure to call witnesses does not constitute ineffective assistance of counsel without a showing that the witnesses were available to testify and that their testimony would have benefitted the defendant. *Butler v. State,* 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *Johnston v. State,* 959 S.W.2d 230, 236 (Tex. App.--Dallas 1997, no pet.). Further, the failure to request the appointment of an expert witness is not ineffective assistance in the absence of a showing that the expert would have testified in a manner that benefitted the defendant. *Teixeira v. State,* 89 S.W.3d 190, 194 (Tex. App. --Texarkana 2002, pet. ref'd). Nothing in this record shows that an expert witness had been contacted and was willing to testify or what his testimony would have been with respect to misidentification. Therefore, based on the record before us, we cannot say that counsel's performance was deficient.

*Failure to Request a Limiting Instruction*

Appellant complains that his counsel failed to request a limiting instruction with respect to the use of extraneous offenses at the punishment phase of trial. He claims that because it is error for the court to refuse such a request if made and because he is precluded from challenging on appeal the trial court's decision to admit such offenses without limitation in the absence of such an instruction, he was denied effective assistance. We disagree for several reasons.

First, appellant neglects to inform us of the nature of the limiting instruction his trial counsel was supposed to request. We are left to guess at it.

5

Second, evidence of extraneous offenses admitted during the punishment phase of the trial can be considered by the factfinder "however it chooses *in assessing punishment.*" *Fields v. State,* 1 S.W.3d 687, 688 (Tex. Crim. App. 1999). If the evidence can be considered in whatever way the jury chooses when assessing punishment, trial counsel could not legitimately request the court to restrict the manner in which the jury could use the evidence. Thus, foregoing such a request was not unreasonable conduct for counsel. *See Autry v. State,* 27 S.W.3d 177, 181 (Tex. App.--San Antonio 2000, pet. ref'd) (holding that counsel cannot be regarded as having erred in failing to present an instruction to which he was not entitled).

*Failure to Request Instruction Under Article 38.23*

Appellant argues that he was denied effective assistance of counsel by his counsel's failure to request an instruction under article 38.23 of the Code of Criminal Procedure with respect to an extraneous drug offense. Article 38.23 provides that no evidence obtained in violation of state or federal laws or constitutions may be admitted into evidence against an accused at the trial of any criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp. 2004). During the punishment phase of trial, evidence was admitted as to methamphetamine found in appellant's vehicle after he was stopped by police with respect to a complaint of a vehicle matching that of appellant driving slowly in the neighborhood and following a girl home from school. Appellant contends that because factual issues were raised as to whether the warrantless stop was legal, counsel should either have requested such an instruction or objected that the charge did not contain one.

6

Appellant contends that there was a dispute as to whether the stop was legal because there was no posted speed limit, appellant's car was not blocking traffic, and he was violating no law. Yet, he does not dispute or question that evidence upon which the officer relied in making the stop. That is, he does not contest the existence or nature of the evidence underlying the officer's decision to stop him, merely whether the circumstances as they existed authorized the stop. Given this, he was not entitled to the instruction requested. This is so because art. 38.32 requires the trial court to provide the instruction only where the underlying facts are disputed, not where the facts are undisputed but their effect is. *Pierce v. State,* 32 S.W.3d 247, 251-52 (Tex. Crim. App. 2000). And, if there is no right to the instruction, counsel cannot be ineffective for failing to request one. *Hardin v. State,* 951 S.W.2d 208, 211 (Tex. App.--Houston [14th Dist.] 1997, no pet.) (holding that the evidence contained no conflict regarding the manner in which the cocaine was obtained).

### Issue Two - Legal and Factual Sufficiency

In his second issue, appellant challenges the legal and factual sufficiency of the evidence establishing him as the person who committed the offense. Thus, the issue involves his identification as the rapist, and we overrule it.

The standards of review applicable to a determination whether the evidence is legally and factually sufficient to support a conviction are well-settled. We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Sims v. State,* 99 S.W.3d 600, 601 (Tex. Crim. App. 2003), *Zuliani v. State,* 97 S.W.3d 589, 593-94

7

(Tex. Crim. App. 2003), and *King v. State,* 29 S.W.3d 556, 562-63 (Tex. Crim. App. 2000) for their explanation.

Again, appellant asserts the evidence is insufficient because his conviction is based solely on the identification of him by the victim which was tainted by showing her three different photo spreads in which the only common photo was that of appellant. Further, two witnesses provided alibis for him. Appellant has not challenged the admissibility of his identification by the victim, and we will therefore address that matter only as it relates to the weight of the evidence. *See Bledsoe v. State,* 21 S.W.3d 615, 621 (Tex. App.--Tyler 2000, no pet.) (holding that because the defendant did not file a motion to suppress the in- court identification or object to it at trial, the court would consider the matter for a factual sufficiency review). The positive identification of a defendant as the perpetrator is sufficient to support a conviction. *Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. 1978), *Lopez v. State,* 815 S.W.2d 846, 849 (Tex. App.--Corpus Christi 1991, no pet.). Also, Grow was with appellant for some length of time and had ample opportunity to look at him. She was able to describe him to police and picked him out of the first photo spread that she was shown. She was then shown two more photo spreads one after the other and both times she picked out appellant. She also stated at trial that she was "absolutely certain" that appellant was the man who raped her. To the extent that any testimony from the victim that it was getting dark at the time of the rape, that she tried not to look at the man, and that she could have been mistaken about the color of his eyes may have presented conflicts in the evidence, those conflicts were for the jury to resolve. *Rodgers v. State,* 827 S.W.2d 376, 378 (Tex. App.--Corpus Christi 1992, no pet.) (holding that

8

discrepancies in the evidence were merely factors for the jury to consider in assessing the weight of the witness's testimony with respect to identification).

Admittedly, there was testimony from appellant's boss that appellant had worked until between 5:00 and 6:00 p.m. on the day of the assault. However, that testimony does not provide an alibi for appellant because the victim testified that she was approached by appellant in the shopping mall parking lot around 6:30 or 7:00 p.m. And, to the extent that appellant's mother stated her son returned to her house around 6:00 p.m. that evening and did not leave thereafter, the jury was free to believe or disbelieve that alibi evidence. *Vasquez v. State,* 67 S.W.3d 229, 237 (Tex. Crim. App. 2002); *Ford v. State,* 509 S.W.2d 317, 318 (Tex. Crim. App. 1974). Thus, based on the victim's identification, a rational jury could conclude beyond a reasonable doubt that appellant was the perpetrator and that conclusion is neither manifestly unjust nor against the great weight of the evidence of record.

### *Issue Three - Admission of Extraneous Offenses*

Via his third issue, appellant complains of the admission during the punishment phase of his trial of the following offenses or bad acts: indecency of a child by exposure, two additional indecent exposure offenses, following a female home, possession of a controlled substance, attempted burglary and aggravated assault, and an extraneous offense justifying the revocation of his probation. We overrule the issue.

### *Indecency with a Child by Exposure*

Appellant complains of the admission of the offense of indecency with a child by exposure because of its violation of the notice requirements of article 37.07 §3(g) of the

9

Code of Criminal Procedure. The State gave notice of its intent to introduce evidence that "on or about May 6, 2000, the defendant committed the offense of Indecency With a Child by Exposure, in Lubbock County, Texas[,] the victims being Richard Humbles and Tiffany Humbles." However, appellant argues that the testimony shows the event occurred on May 14, 2000, and, thus, insufficient notice was given.

Upon timely request by the accused, reasonable notice must be given in advance of trial of the intent to introduce evidence of other crimes or bad acts. TEX. R. EVID. 404(b). If the crime or bad act has not resulted in a final conviction or a probated or suspended sentence, notice of the intent to introduce evidence of such crime or bad act is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. TEX. CODE CRIM. PROC. ANN. art. 37.07 §3(g) (Vernon Supp. 2004).

We review the trial court's admission of extraneous offense evidence under an abuse of discretion standard. *Mitchell v. State,* 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). It has been held by other courts that the failure to state the exact date of the offense is not necessarily fatal to the admission of the bad act or offense. *See Burling v. State,* 83 S.W.3d 199, 203 (Tex. App.--Fort Worth 2002, pet. ref'd) (holding that a period of six weeks when no claim of surprise was raised is a time range that is reasonable); *Splawn v. State,* 949 S.W.2d 867, 870-71 (Tex. App.--Dallas 1997, no pet.) (holding that listing of a range of months in which the bad act occurred complied with the notice requirements).

10

In this instance, there was only a variance of eight days between the date given in the notice and the date testified to at trial. Further, the State represented on the record without contradiction that appellant had a copy of the indictment which showed the correct date of May 14, 2000. Thus, the trial court did not abuse its discretion in overruling appellant's objection to the admission of the offense.

*Indecent Exposure*

With respect to another incident of indecent exposure that occurred on March 31, 1997, in Crosby County, appellant now argues that the State failed to provide notice of the name of the victim, failed to prove beyond a reasonable doubt that the offense occurred in Crosby County, and failed to prove the requisite intent. However, at trial, appellant objected solely on the basis that the name of the victim was not provided. The State is required to give the name of the victim only when there is no final conviction. TEX. CODE CRIM. PROC. ANN. art. 37.07 §3(g) (Vernon Supp. 2004). And, such a final conviction existed here, as illustrated by the judgment entered into evidence manifesting it.

Finally, since the other grounds for objection to the evidence were not raised below, they were waived. Accordingly, there was no error in the admission of this evidence.

*Following a Female Home*

Appellant challenges the admission of the extraneous offense that "on or about January 29, 2001, the defendant was reported as a 'suspicious person' for following a female home, in Lubbock County, Texas[,] the victim being Sara Barker." In doing so, he contends that the date is incorrect and that the testimony provided is no evidence of any bad act or crime under Texas law.

11

The witness testified that the event occurred on January 31, 2001, that is, only two days later then the date alleged in the notice. Furthermore, appellant does not contend that this slight discrepancy in dates surprised him or in any way hindered him from addressing or negating the probative effect of the evidence. Thus, as previously discussed, the notice was reasonable.

As to whether the conduct constituted a bad act and was therefore admissible,[3] appellant made no objection to the evidence on that ground at trial. Therefore, the ground was waived. TEX. R. APP. P. 33.1(a)(1) (requiring as a prerequisite to presenting a complaint for appellate review that the complaint be made to the trial court by a timely request, objection, or motion).

*Indecent Exposure*

With respect to another act of indecent exposure occurring on or about January 31, 2001, appellant complains that the State failed to prove beyond a reasonable doubt that he exposed his genitals to Rocky Smith (Smith) or that he did so with intent to arouse or gratify the sexual desire of any person. We disagree.

Smith testified that he was visiting his 86-year-old grandmother at her home in the country when he noticed a pickup truck parked in the driveway. He walked to the passenger side to see if he could help the person and noticed that appellant wore no

---

[3] The witness testified that she drove into her driveway, looked up, and noticed that a pickup truck had pulled into her driveway behind her. She got out of her vehicle and went to see what the person wanted. Appellant told her that she did not know him but that he would like to get to know her. He also asked if he could come in her house. She replied "no" and quickly got back in her vehicle and locked the doors.

clothes from the waist down. Appellant then grabbed his pants, covered himself up, and said he "was looking for some pussy." Smith told him to leave which appellant did.

A person commits the offense of indecent exposure if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person and he is reckless about whether another is present who will be offended or alarmed by the act. TEX. PEN. CODE ANN. §21.08(a) (Vernon 2003). There does not have to be evidence that Smith actually saw appellant's penis, only that his genitals were exposed. *Metts v. State,* 22 S.W.3d 544, 547-48 (Tex. App.--Fort Worth 2000, pet. ref'd). Furthermore, evidence that the accused was naked from the waist down is sufficient to illustrate exposure. *Id.* Moreover, in this instance, Smith testified that appellant was naked from the waist down and did not cover himself until *after* Smith had made that observation. Thus, even though Smith did not actually testify that he saw appellant's genitals, it can reasonably be inferred not only that appellant was naked, but also that his genitals were exposed when Smith encountered him.

Further, the intent to arouse or gratify can be inferred from the conduct of, remarks by, and circumstances surrounding the acts. *Martins v. State,* 52 S.W.3d 459, 474 (Tex. App.--Corpus Christi 2001, no pet.). Appellant was sitting in his truck blocking a driveway, was naked from the waist down, and indicated that he wanted a woman or "some pussy." That evidence is sufficient to prove his intent. *See Claycomb v. State,* 988 S.W.2d 922, 926 (Tex. App.--Texarkana 1999, pet. ref'd) ( finding the evidence sufficient to show intent when a man on a bench in a public place exposed his penis, made eye contact with a woman and her daughter who walked by, made no effort to cover himself, and his penis

13

was erect); *Barker v. State,* 931 S.W.2d 344, 347 (Tex. App.--Fort Worth 1996, pet. ref'd) (finding the evidence sufficient to show intent when the defendant pulled out his penis as two girls walked by and glanced in his truck). From appellant's remarks and the circumstances surrounding them, one could rationally infer, beyond reasonable doubt, that appellant acted with the intent to arouse or gratify the sexual desires of a person, namely himself. So, the trial court did not abuse its discretion in admitting the evidence.

*Possession of a Controlled Substance*

Appellant complains of the admission into evidence of his possession of a controlled substance after he was illegally stopped by police when there was no probable cause for the stop or any specific articulable facts allowing the stop.

Officer Allen Davis testified outside the presence of the jury that he responded to a radio call on January 20, 2001, at about 7:00 p.m. in reference to a suspicious vehicle following a girl. The reporting party lived at 1905 55th Street. He spoke to the complaining party and was given a description of the vehicle as a two-ton tan Ford diesel pickup truck and a license plate number. Earlier in the day, Davis had taken a call with the same vehicle description and license number in reference to someone following a little girl from Atkins Junior High School to her house. Shortly thereafter, he learned that, at his request, Officer Scott had stopped that vehicle in the 2000 block of 54th Street. As Officer Scott was talking to appellant, Davis approached the vehicle and through the window of the driver's side saw a syringe, syringe cap, and a plastic bag with a powdery substance in it on the floorboard. The powdery substance was later determined to be methamphetamine.

14

Appellant contends that because he was not violating any law, there were no specific articulable facts that would justify an investigatory stop. However, circumstances raising the suspicion of illegal activity do not have to be criminal in and of themselves. *Crockett v. State,* 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). Suspicious conduct is by its nature ambiguous and the purpose of an investigative stop is to resolve that ambiguity. *Worley v. State,* 912 S.W.2d 869, 874 (Tex. App.--Fort Worth 1995, pet. ref'd). Further, the police do not have to rule out every innocent explanation for suspicious behavior to justify such a stop. *United States v. Kaplansky,* 42 F.3d 320, 327 (6th Cir. 1994). In *Kaplansky,* a woman reported to police that a suspicious blue van was present in her apartment parking lot, that he was "watching," that he kept "coming around," and that he had followed her 14-year-old daughter a couple of times. The man was described as white with a ponytail and a beard. Police officers responding to a radio dispatch saw a van in the lot matching the description given to them and stopped the vehicle. The court concluded that the stop was justified by reasonable suspicion. *Id.*

Similarly, we conclude that the officer was justified in stopping appellant based on two complaints made to the police on the same day of a vehicle matching the license plate and description of appellant's vehicle driving slowly in the neighborhood and following young girls. The drugs and drug paraphernalia were observed in plain view after the stop; so, the trial court did not err in admitting evidence of them. *See Walter v. State,* 28 S.W.3d 538, 544 (Tex. Crim. App. 2000) (holding there is no privacy interest in the interior of a vehicle when the officer has a right to be where he is and merely looks into the vehicle).

*Attempted Burglary and Aggravated Assault*

15

Appellant next complains of the admission into evidence of an attempted burglary committed on Tammy and Tom Esparza on August 4, 2001, and an aggravated assault committed on Tom Esparza on August 4, 2001, because they were not proved beyond a reasonable doubt. Appellant made no objection to the testimony of Esparza, either at the hearing held outside the presence of the jury or during trial. Thus, he waived the complaint. *Black v. State,* 938 S.W.2d 758, 760 (Tex. App.--Amarillo 1997, no pet.); *Robbins v. State,* 856 S.W.2d 249, 253-54 (Tex. App.--Beaumont 1993, no pet.).

*Probation Revocation*

Finally, appellant contends the jury was erroneously presented details of the reasons for the revocation of his probation when the State introduced documentary evidence of his deferred adjudication and subsequent conviction for public lewdness. At trial, he objected to the introduction of the exhibit which consisted of the order deferring adjudication, order revoking probation, judgment, and sentence on the basis that the order revoking probation referred to bad acts for which he was not given notice. That objection does not comport with the objection on appeal, and it is therefore waived. *Brown v. State,* 6 S.W.3d 571, 582 (Tex. App.--Tyler 1999, pet. ref'd).

### Issue Four - Charge on Elements of Extraneous Offenses

In his last issue, appellant claims he was constitutionally and statutorily entitled to have the jury instructed as to the elements of each extraneous offense admitted into evidence at the punishment phase. We overrule the issue.

As previously stated, article 37.07 §3(a) of the Texas Code of Criminal Procedure permits the admission, during the punishment phase, of evidence the court deems

16

relevant. TEX. CODE CRIM. PROC. ANN. art. 37.07 §3(a)(1) (Vernon Supp. 2004). Included within the scope of the statute is extraneous evidence of crimes and bad acts "that is shown beyond reasonable doubt by evidence to have been committed by the defendant . . . ." *Id.* We are asked to read this provision as requiring that the jury be instructed about the elements of the offense. Without such an instruction, the argument goes, it cannot assess whether appellant committed extraneous offenses or bad acts beyond reasonable doubt. This contention could have some merit if the jury were to make the determination of whether a criminal or bad act was committed. Yet, it does not. The trial court does. *Malpica v. State*, 108 S.W.3d 374, 377 (Tex. App.--Tyler 2003, no pet.). The duty of the factfinder is to determine whether those bad acts were committed by the defendant. *See Fields v. State*, 1 S.W.3d at 688 (holding that the statute requires that the evidence may not be considered in assessing punishment until the factfinder is satisfied beyond reasonable doubt that these acts "are attributable to the defendant"); *Malpica v. State*, 108 S.W.3d at 377 (stating that if the evidence is admitted, the jury must be instructed that it should not consider the extraneous offenses unless it believes beyond reasonable doubt that the "accused was the perpetrator"). Thus, there was no need for the trial court to instruct the jury about the elements of the extraneous offenses since the jury does not determine whether they occurred, only whether appellant was the perpetrator.

Having overruled all the points of error, we affirm the judgment of the trial court.


Per Curiam

Publish.

17